UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| SYED UMAR HUSAINY,<br><br>  Plaintiff,<br><br>  v.<br><br>GUTWEIN LLP,<br><br>  Defendant. | CAUSE NO.: 4:18-CV-28-TLS |

**OPINION AND ORDER**

This case arises out of the Federal Debt Collection Practices Act (FDCPA) and involves representations the Defendant Gutwein LLP made to the Plaintiff Syed Umar Husainy during a state court landlord-tenant dispute. The Plaintiff claims that the Defendant violated 15 U.S.C. § 1692e and § 1692f when it demanded payment for "doc prep" fees and attorney's fees on behalf of its client. Now before the Court are the following motions: (1) the Defendant's Motion to Strike Plaintiff's Amended Initial Disclosures [ECF No. 72]; (2) the Defendant's Motion for Summary Judgment [ECF No. 75]; (3) the Plaintiff's Motion for Summary Judgment [ECF No. 77]; (4) the Plaintiff's Motion to Strike Gutwein Affidavit and Statistics Exhibit [ECF No. 83]; (5) and the Defendant's Motion to Strike Plaintiff's Affidavit [ECF No. 87]. For the reasons below, the Court grants summary judgment in favor of the Defendant on each of the Plaintiff's claims and denies the remaining motions.

**MOTIONS TO STRIKE**

A. **The Defendant's Motion to Strike Plaintiff's Amended Initial Disclosures**

Beginning with the motions to strike, the Defendant first requests that the Court strike as untimely the Plaintiff's disclosure of 58 newly identified witnesses and any claim for attorney's fees. Ordinarily, a party must supplement their Rule 26 initial disclosures in a timely manner

when the party learns that a "disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). If a party fails to provide that information in accordance with the rules, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In assessing harmlessness, the court considers (1) the prejudice or surprise to the party, (2) the ability to cure the prejudice, (3) the likelihood of disruption, and (4) any bad faith involved in not disclosing the evidence earlier. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

At the outset, the Court highlights the fact that this motion was filed a month before the parties' motions for summary judgment and was not addressed to any specific evidence being used in a motion or at a hearing.[1] While the Defendant might be correct that the Plaintiff violated discovery rules, it is not clear how the Defendant was harmed by the late disclosure since no evidence was actually presented to the Court at that time. *See Richards v. PAR, Inc.*, No. 1:17-cv-409, 2021 WL 4775350, at *6 (S.D. Ind. Oct. 13, 2021). Additionally, the Defendant's argument that the Plaintiff cannot recover state court attorney's fees is better raised in a motion for summary judgment and does not appear to be a valid basis for striking evidence under Rules 26 and 37. Therefore, the Court denies the Defendant's Motion to Strike Plaintiff's Amended Initial Disclosures [ECF No. 72].

**B.     The Plaintiff's Motion to Strike Gutwein Affidavit and Statistics Exhibit**

Next, the Plaintiff requests that the Court strike Stuart Gutwein's Affidavit, *see* Def. Ex. J, ECF No. 75-10, and an exhibit providing statistics about the type of legal matters the Defendant has worked on, *see* Def. Ex. O-1, ECF No. 75-10. The Plaintiff argues that Stuart

---

[1] In contrast, the Court notes that the Defendant's Motion to Strike Plaintiff's Affidavit requests that the Court strike from consideration the Plaintiff's statements regarding actual damages, including state court attorney's fees. *See* Def. Mot. to Strike Pl. Aff. 2, ECF No. 87. That motion targets specific evidence being offered in connection with the parties' motions for summary judgment.

Gutwein was not properly disclosed as a witness, that his affidavit provides legal conclusions, and that the statistics are based on unknown and undisclosed documents.

Here, any improper disclosure of Stuart Gutwein as a witness is harmless and does not warrant striking his affidavit. As the Defendant points out, Stuart Gutwein was initially listed in the Plaintiff's initial disclosures, which the Defendant incorporated into its own initial disclosures. *See* ECF Nos. 86-1, 86-2. Stuart Gutwein was also referenced in other documents provided during discovery, and he appeared (albeit in a minor role) in the underlying state court litigation that gave rise to this case. *See* ECF No. 86-4; Def. Ex. L, ECF No. 75-12. Thus, it is difficult to imagine how the Plaintiff would have been surprised by Stuart Gutwein's participation as a witness. *See David*, 324 F.3d at 857. Moreover, there is no suggestion of bad faith considering the only reason Stuart Gutwein was not disclosed as a witness was because the Plaintiff amended his disclosures after the close of discovery. *See id.*

In addition, the Plaintiff raises specific concerns regarding paragraphs 9, 12, and 26 of Stuart Gutwein's affidavit, arguing that they are improper legal conclusions. Although the Plaintiff raises legitimate concerns, the Court does not rely on those statements in ruling on the motions for summary judgement and declines to strike his affidavit on this basis. *See, e.g.*, *Vaught v. Quality Corr. Care, LLC*, No. 1:15-CV-346, 2018 WL 1900153, at *2 (N.D. Ind. Apr. 19, 2018) ("Because the Court is able to distinguish which exhibits, affidavits, statements, and commentary may properly be considered when deciding whether summary judgment is appropriate, the Court declines to strike these statements from the Plaintiff's Memorandum.").

The Plaintiff finally asks the Court to strike the statistics provided in Defendant's Exhibit O-1, which Stuart Gutwein attested to being "[a] true and accurate copy of the firm's case and revenue statistics." Def. Ex. J, ¶ 15. The Plaintiff claims that he did not receive the underlying

documents supporting those statistics and that the statistics are irrelevant. These arguments are without merit. The Plaintiff received the spreadsheet on May 24, 2021, more than five months before the close of discovery. *See* ECF Nos. 86-3, 70. This means he had ample time to review the document and seek out additional information. These statistics are also relevant to the case because, as discussed below, they relate directly to whether the Defendant is a "debt collector" as it is defined at 15 U.S.C. § 1692a(6). The Plaintiff provides no other argument or any caselaw to support striking this evidence, so the Court denies the Plaintiff's Motion to Strike Gutwein Affidavit and Statistics Exhibit [ECF No. 83].

C.   **The Defendant's Motion to Strike Plaintiff's Affidavit**

In the final motion to strike, the Defendant moves the Court to strike the Plaintiff's affidavit, *see* Pl. Ex. 12, ECF No. 82-12, arguing that the statements made therein were not disclosed in a timely manner. The Plaintiff's affidavit includes statements regarding actual damages he suffered, including attempts to borrow money, $30 of printing fees, a $6,000 bill for attorney's fees, difficulty concentrating in school, and increased muscle tension. *See id.* However, because these statements are not material to the Court's ruling on the motions for summary judgment, the Court denies as moot the Defendant's Motion to Strike Plaintiff's Affidavit [ECF No. 87].

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's

claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). In response, the non-movant "must make a sufficient showing on every element of [the non-movant's] case on which [the non-movant] bears the burden of proof; if [the non-movant] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). With cross-motions for summary judgment, the Court must construe all facts in the light most favorable to the party against whom the motion under consideration is made. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## FACTUAL BACKGROUND

This case is an offshoot of a contentious, years-long legal battle. It started on January 23, 2017, when Granite Management, LLC, proceeding pro se, filed a small claims suit against the Plaintiff in Tippecanoe Superior Court. Def. Ex. A, ECF No. 75-1. Granite was seeking to evict the Plaintiff from his apartment and/or obtain a judgement of $1,280.50 plus court costs. *Id.* The damages assessment reflected unpaid rent, maintenance charges, late fees, a parking fee, and a "doc prep" fee. *Id.* The fees were being charged to the Plaintiff because Granite determined that a clogged and overflowing septic pit was caused by Clorox wipes having been flushed down the Plaintiff's toilet. *See* Def. Ex. E, ¶¶ 6–16, ECF No. 75-5. The lawsuit was brought when the Plaintiff did not pay the invoices and additional fees began to accrue. *See id.* at ¶ 16. The

Plaintiff, represented by counsel, responded by filing a counterclaim and third-party complaint against Granite asserting several claims.[2] *See* Def. Ex. C, ECF No. 75-3.

On February 10, 2017, the Defendant entered an appearance in the lawsuit as counsel for Granite. Def. Ex. D, ECF No. 75-4. The Defendant is a law firm that provides services in a broad range of practice areas, and Granite had been one of its clients since at least 2013. *See* Def. Ex. J, ¶ 4; Pl. Ex. 17, at 48:4–15, ECF No. 82-7. Some of the work the Defendant performed was debt collection, including work on 40 consumer debt matters between 2016 and 2018, most of which were for Granite. Def. Ex. O-1. With that said, debt collection was not a significant percentage of the firm's work as it made up less than 1% of the firm's total case load and less than 0.32% of total revenue between 2016 and 2020. *Id.* Moreover, the Defendant infrequently sent collection letters, did not represent financial institutions regularly collecting consumer debt, and did not maintain staff or internal processes for handling such matters. Def. Ex. J, ¶¶ 13–14, 17.

On April 28, 2017, the Defendant filed an amended complaint on behalf of Granite, asserting claims for breach of contract and negligence. Def. Ex. E, at 1–4. Attached to the amended complaint were invoices for the plumbing repairs that the Plaintiff allegedly owed and email communications between Granite employees and the Plaintiff regarding payment. *Id.* at 16–27. Shortly after the amended complaint was filed, the case was transferred from the state court's small claims docket to its plenary docket. Def. Ex. F, ECF No. 75-6.

As the state court case progressed, the parties engaged in discovery and settlement talks. At various points throughout the case, the Defendant sought to recover document preparation fees and attorney's fees for Granite. *See* Pl. Ex. 3, at 2–4, ECF No. 77-3; Pl. Ex. 5, ECF No. 77-5

---

[2] Although the Plaintiff's original counterclaim and third-party complaint included claims against Granite for FDCPA violations, *see* Def. Ex. C, at 5–6, ECF No. 75-3, the Plaintiff's subsequent filings dropped those claims, *see* Def. Ex. G, ECF No. 75-7; Def. Ex. H, ECF No. 75-8; Def. Ex. I, ECF No. 75-9.

Pl. Ex 9, ECF No. 77-9; Pl. Ex. 13, ECF No 82-3; Pl. Ex. 14, ECF No. 82-4. The $150 document preparation fee reflected a Granite employee's work "to prepare all of the documents, e-file them, do everything that a paralegal would do in that instance." Pl. Ex. 6, at 125:21–24, ECF No. 77-6. As for Granite's attorney's fees, the Defendant had charged approximately $32,000 by December 2017. *See* Pl. Ex. 14.

On April 24, 2018, the Plaintiff's counsel sent a letter to the Defendant, claiming that the Defendant violated the FDCPA by, among other things, attempting to collect document preparation fees that were not permitted by law or a valid agreement. Def. Ex. O-2, ECF No. 75-10. Three days later, the Defendant disputed those allegations in a letter to the Plaintiff's counsel, noting that the fees were being sought under the lease agreement and that Granite would be entitled to collect those fees if it prevailed in the state court action. Def. Ex. O-3, ECF No. 75-10. That same day, the Plaintiff filed his complaint in this Court. ECF No. 1.

After this case was filed, a jury in the state court case returned a verdict against Granite on its breach of contract claims. Pl. Ex. 15, ECF No. 82-5. The jury also ruled in favor of the Plaintiff on his claims, which the Indiana Court of Appeals upheld on appeal. *See Husainy v. Granite Mgmt., LLC*, 132 N.E.3d 486, 490–91, 495, 497 (Ind. Ct. App. 2019).

## PROCEDURAL BACKGROUND

The Plaintiff filed his Complaint [ECF No. 1] on April 27, 2018, seeking relief under the Declaratory Judgement Act and asserting claims for negligence and violations of the FDCPA. Early on, the Defendant filed a motion to dismiss, which the Court granted in part and denied in part. *See* Aug. 27, 2020 Op. & Order 10–11, ECF No. 20. The Court dismissed the Plaintiff's declaratory judgment claim, negligence claim, and one of his FDCPA claims, but allowed claims asserting violations of § 1692e and § 1692f of the FDCPA to proceed. *Id.* at 3, 5–6, 7, 9.

On January 20, 2022, the parties filed motions for summary judgment. ECF Nos. 75, 77. The Defendant seeks judgment in its favor on all the Plaintiff's remaining claims, while the Plaintiff only seeks partial summary judgment on one of his claims. These motions are fully briefed and ripe for ruling. *See* ECF Nos. 76, 78, 81, 82, 84, 88.

**ANALYSIS**

The FDCPA was enacted to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The act imposes "affirmative requirements on debt collectors and prohibit[s] a range of debt-collection practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (citing 15 U.S.C. §§ 1692b–1692j). If a debt collector engages in a prohibited practice, the FDCPA "authorizes private civil actions against debt collectors." *Id.* (citing 15 U.S.C. § 1692k(a)). In this case, the Plaintiff claims that the Defendant violated 15 U.S.C. § 1692e and § 1692f when the law firm attempted to collect document preparation fees and attorney's fees in the underlying state court lawsuit.[3] While the Defendant argues that these claims individually fail on the merits, the Defendant also raises issues regarding the statute of limitations and whether the FDCPA even applies to its actions at all. Thus, the Court first addresses those broadly applicable arguments before turning to the Plaintiff's specific claims.

**A.   Statute of Limitations**

The first issue is whether the Plaintiff's Complaint, filed April 27, 2018, is barred under the FDCPA's one-year statute of limitations. The Defendant argues that the Plaintiff's claims are untimely because the limitations period began to run on either January 23 or 24, 2017, when the

---

[3] The Plaintiff also brought a claim that the Defendant violated 15 U.S.C. § 1692e for disclosing the Plaintiff's social security number in state court filings. However, the Plaintiff abandons this claim at summary judgment. *See* Pl. Resp. 14, ECF No. 82.

8

original suit was filed by Granite and served on the Plaintiff. The Plaintiff responds that the clock started when the Defendant filed the amended complaint on April 28, 2017.

The FDCPA provides that a claim may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "In determining when an FDCPA violation occurred, the court looks to 'the specific violations alleged.'" *Wies v. Cavalry SPV I, L.L.C.*, No. 1:14-CV-187, 2015 WL 569897, at *2 (N.D. Ind. Feb. 11, 2015) (quoting *Jones v. U.S. Bank Nat'l Ass'n*, No. 10 C 8, 2011 WL 814901, at *3 (N.D. Ill. Feb. 25, 2011)). Generally speaking, "[e]ach violation of a federal statute carries its own period of limitations." *Gomez v. Cavalry Portfolio Servs., LLC*, 962 F.3d 963, 966 (7th Cir. 2020).

Here, the Plaintiff's complaint asserts that the Defendant violated the FDCPA when it sought to collect document preparation fees and attorney's fees. Although Granite had originally sought those fees in its pro se complaint, the earliest point at which the Defendant could have attempted to collect those fees was when it filed the amended complaint. There is no indication the Defendant made any representations to the Plaintiff regarding any debt prior to that time. And the only other action the Defendant took prior to the amended complaint was merely entering an appearance on behalf of Granite. Therefore, at the earliest, the limitations period began to run on April 28, 2017.

In its brief, the Defendant attempts to capitalize on cases holding that subsequent filings in a collections lawsuit do not restart or toll the statute of limitations. *See, e.g.*, *Wies*, 2015 WL 569897, at *2 (stating that when the alleged FDCPA violation "arises out of a collections lawsuit, the statute of limitations begins to run when the collection action is filed or, at the latest, when the complaint and summons are served"). This argument is overstated. For starters, the Seventh Circuit has presumed "that collection activity within or related to pending litigation may

lead to new, and separately prosecutable, violations of the FDCPA." *Gajewski v. Ocwen Loan Servicing*, 650 F. App'x 283, 286 (7th Cir. 2016). But more importantly, the collections suit was originally filed by Granite pro se and the Defendant provides no basis for attributing Granite's unilateral conduct to the Defendant. The alleged violations of the FDCPA only accrued against the Defendant once it made a representation to the Plaintiff—namely, by filing the amended complaint. Since the FDCPA's "language unambiguously sets the date of the violation as the event that starts the one-year limitations period," *Rotkiske*, 140 S. Ct. at 360, the Court will not run the clock earlier due to a third party's action.

The Defendant also argues that the amended complaint dropped the demand for document preparation fees, which means there could not have been a violation related to those fees within the one-year limitations period. However, the facts of the case undercut this assertion. While the amended complaint does not explicitly reference document preparation fees and only provides invoices for other charges, that does not mean the Defendant no longer sought those fees under the breach of contract claim. In fact, as referenced above, there were various instances when the Defendant appeared to be seeking those fees for Granite. Based on that evidence—to which the Defendant did not respond—it seems doubtful that the Defendant ceased any efforts to collect the document preparation fees. The Plaintiff's claims were therefore within the time period provided by the FDCPA's statute of limitations.

**B.      "Debt Collector" Under the FDPCA**

The other issue applicable to both the Plaintiff's FDCPA claims is whether the Defendant is a "debt collector" under the statute. This is important because the FDCPA's "substantive provisions apply only to debt collectors." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018). A "debt collector" is defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). As the language suggests, this requires a party to "engag[e] in some affirmative conduct with regard to collecting a debt," as opposed to merely passive conduct. *McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006). Litigation activity, including pleadings or filings in court, can also fall within the FDCPA's restrictions. *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016).

There does not appear to be a dispute that the Defendant was attempting to collect a "debt" from the Plaintiff, *see* 15 U.S.C. §1692a(5), nor does the Plaintiff claim that the Defendant's "principal purpose" was debt collection, *id.* § 1692a(6). Instead, the issue comes down to whether the Defendant "regularly collects or attempts to collect" debt. *Id.* When assessing the regularity of debt collection, courts consider a variety of factors. This includes, among other things, the volume of the firm's practice devoted to debt collection, the volume of debt collection services, whether the party frequently uses a particular debt collection letter, the relationship between the party and a creditor, and whether there are personnel specifically assigned to debt collection work. *See Heller v. Graf*, 488 F. Supp. 2d 686, 692–93 (N.D. Ill. 2007) (collecting cases); *see also James v. Wadas*, 724 F.3d 1312, 1317–18 (10th Cir. 2013); *White v Reising*, No. 2:09-cv-218, 2011 WL 556516, at *2 (N.D. Ind. Feb. 7, 2011).

While this appears to be a close case, the Court concludes that neither party is entitled to judgment on whether the Defendant is a debt collector. Considering the scope of the Defendant's overall practice and how debt collection is a small fraction of the firm's work—i.e., it accounts for less than 1% of total case load and less than 0.32% of total revenue—there is a strong

argument that the law firm is not a debt collector. *See Schroyer v. Frankel*, 197 F.3d 1170, 1176–77 (6th Cir. 1999) (concluding that a law firm was not a debt collector when 2% of its overall practice and 7.4% of its annual cases involved debt collection); *Heller*, 488 F. Supp. 2d at 692 (stating that "courts have generally found that where an attorney's practice is approximately 1% debt collection, that is not sufficient to satisfy the definition"). Especially since the Defendant's matters were undertaken on behalf of a business client, as opposed to a major creditor or financial institution, it would be reasonable to conclude that the Defendant does not fit the definition. *See Schyroyer*, 197 F.3d at 1176–77.

On the other hand, simply because debt collection cases make up a small share of the firm's overall work, that does not mean it falls outside the definition. This is because "if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity." *Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 119 (3d Cir. 2007) (quoting *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997)); *see Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 63 (2d Cir. 2004) (noting that "debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not"). Between 2016 and 2018, the Defendant was involved in 40 debt collection matters, 35 of which were on behalf of Granite. While these numbers do not affirmatively establish that the Defendant was a debt collector, they reasonably point in that direction and make the issue difficult to resolve at summary judgment. *See Kaiser v. Braje & Nelson, LLP*, No. 3:04-CV-405, 2006 WL 1285143, at *3 (N.D. Ind. May 5, 2006) (concluding a law firm was a debt collector because it filed 117 debt collection cases in two years, 88 of which were on behalf of one client); *see also Goldstein*, 374 F.3d at 63 n.4

(explaining that "landlords or other lessors . . . are among the types of businesses that may regularly engage legal assistance in consumer debt collection"). It is also worth noting that, while debt collection cases may not be a significant part of the Defendant's total work, the collection cases appear to be a larger share of the firm's litigation cases. *See* Def. Ex. O-1 (showing 12 of 47 cases in 2016, 18 of 82 in 2017, and 5 of 66 in 2018). Because these facts could reasonably support either outcome, neither party is entitled to judgment on the "debt collector" issue.

**C.     The Plaintiff's § 1692f Claim**

Turning to the Plaintiff's individual claims, the Court begins with § 1692f since both parties seek summary judgment on this claim. Section 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. It then provides a non-exhaustive list of examples, including a prohibition on "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Whether the Defendant violated that provision depends on: "(1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003).

The parties' dispute is whether the Defendant was authorized under the lease agreement to seek document preparation fees and attorney's fees on behalf of Granite during the state court litigation. The lease agreement provides that a tenant will be in default of the lease if he "fails to pay any installment of rent, additional rent, late charges, or any other amount due under this lease when due; abandons the premises; or is not in compliance with any section of this lease." Def. Ex. B, at ¶ 12, ECF No. 75-2. In the event of default, the landlord may take a number of actions, including:

> Landlord may sue Tenant to collect any back rent but that action does not terminate the lease. The remedies specified herein are cumulative and in addition to any remedies of the Landlord at law or in equity. *Upon default by the Tenant, the Tenant shall pay all costs and expenses including attorney's fees incurred by Landlord in connection with its exercise of any rights or remedies it may have under this lease because of such default.*

*Id.* (emphasis added).

Based on the terms of this provision, the Court concludes that the Defendant was authorized to seek the document preparation fees and attorney's fees in the state court litigation. The Defendant's demand of attorney's fees was appropriate under § 1692f because those fees are plainly covered by the agreement's language. *See Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013) ("When the terms of a contract are drafted in clear and unambiguous language, we will apply the plain and ordinary meaning of that language . . . .").[4] Likewise, the lease provision appears to cover the document preparation fees that were charged for Granite's efforts to collect in state court. The phrase "all costs and expenses" is broadly worded and would allow Granite to seek reimbursement for the work it performed, which specifically included preparing the documents, e-filing them, and other work typical of a paralegal. *See Expense*, Black's Law Dictionary (11th ed. 2019) ("An expenditure of money, time, labor, or resources to accomplish a result; esp., a business expenditure chargeable against revenue for a specific period."); *Cost*, Black's Law Dictionary ("The amount paid or charged for something; price or expenditure."); *see also Bernal v. NRA Grp., LLC*, 930 F.3d 891, 893–94 (7th Cir. 2019) (interpreting "cost" in a similar contractual provision). The cost of this work was also incurred in connection with Granite exercising its right to sue in the event of default.

---

[4] The Seventh Circuit has looked to the relevant state law when interpreting contractual provisions under 15 U.S.C. § 1692f. *See, e.g.*, *Robbins v. MED-1 Sols., LLC*, 13 F.4th 652, 659 (7th Cir. 2021) (relying on an Indiana Court of Appeals decision).

14

The Court recognizes that Granite was ultimately unable to recover the document preparation fees and attorney's fees because a jury ruled against it on the breach of contract claim. However, that does not mean the Defendant's attempts to collect those fees on behalf of Granite was unauthorized by the lease agreement or amounted to an unconscionable debt practice. Especially given the context of the state court litigation and the fact that the Plaintiff was represented by counsel, it was clear those fees would only be collected if Granite prevailed at trial. *See Owens v. LVNV Funding, LLC*, 832 F.3d 726, 736 (7th Cir. 2016) (explaining that a competent attorney standard applies to statements made to a consumer's lawyer).

In response, the Plaintiff argues that the $150 document preparation fee was for work performed by internal Granite staff and was not actually incurred by Granite. In support of this position, he relies on language from *Bernal v. NRA Group, LLC* and *Seeger v. AFNI, Inc.*, which says that a fee which is never paid cannot be a cost incurred. *See Bernal*, 930 F.3d at 897 ("And a cost that will never be charged is not a 'cost incurred in collecting a debt.'"); *Seeger*, 548 F.3d 1107, 1113 (7th Cir. 2008) (quoting approvingly a district court's holding that "a collection fee which is never paid is not a cost that [the original creditor] would incur"). Although both cases dealt with similar contractual provisions between a creditor and a consumer, those cases addressed whether charges from a debt collector could be passed down to the consumer under the contract. *See Bernal*, 930 F.3d at 892; *Seeger*, 548 F.3d at 1110. In *Bernal*, a demand for collection fees did not violate § 1692f(1) because the creditor, pursuant to a fee arrangement, would ultimately be responsible for the debt collector's fees. *Bernal*, 930 F.3d at 897. In *Seeger*, the creditor sold the debt outright to the debt collector and would never be charged the collection fees. *Seeger*, 548 F.3d at 1113. Thus, the debt collector's demand for those collection fees was not authorized by the contract and violated § 1692f(1). *Id.* But this case presents a different

situation. The document preparation fees being sought were incurred directly by Granite—as opposed to a debt collector—and they fall directly under the lease agreement's provision. The Plaintiff provides no support from the agreement's language or any other caselaw to suggest that Granite's internal costs and expenses would not have been authorized by the lease agreement.

The Plaintiff also contends that the state court jury already determined that the document preparation fees and attorney's fees were impermissible and that this Court is bound by the *Rooker-Feldman* doctrine. However, the Plaintiff misconstrues the *Rooker-Feldman* doctrine, which is meant to apply to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Here, the Plaintiff won in state court and then filed this suit in federal court; a ruling in the Defendant's favor would not disrupt the state court judgment.

The Plaintiff's *Rooker-Feldman* argument also falls short because there is no evidence that the state court actually decided whether the fees could be sought under the lease agreement. The Plaintiff points to the jury's verdict, but that was a general form that merely shows that the jury ruled in favor of the Plaintiff on Granite's breach of contract claim. *See* Pl. Ex. 15. There is no reference to the fees at issue or what was authorized under the lease agreement. Likewise, the Plaintiff's reliance on the Indiana Court of Appeals decision is misplaced because it does not address the specific issue here. *See Husainy v. Granite Mgmt., LLC*, 132 N.E.3d 486 (Ind. Ct. App. 2019). That decision affirmed the jury's verdict and remanded so the trial court could reconsider its ruling on the Plaintiff's attorney's fees. *Id.* at 490–91.

Ultimately, the Defendant is entitled to summary judgment on the Plaintiff's § 1692f claim because the fees it demanded on behalf of Granite were authorized by the lease agreement.

**D.     The Plaintiff's § 1692e Claim**

The Plaintiff's second claim asserts that the Defendant's demand for document preparation fees and attorney's fees were also false and misleading. Section 1692(e) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Like § 1692f, this provision provides a non-exhaustive list of ways that a debt collector can violate the statute. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). The Plaintiff specifically references § 1692e(5) and § 1692e(10). Subsection (5) prohibits issuing a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Subsection (10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

When evaluating whether a statement is "false, deceptive, or misleading," the Court asks: "(1) whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer if the consumer is not represented by counsel or (2) whether a competent attorney would be deceived, even if he is not a specialist in consumer debt law." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016). This is where the first dispute begins. The Defendant contends that the "competent attorney" standard should apply because the Plaintiff was represented by counsel during the state court litigation. The Plaintiff responds that the representations were "literally false," which meant the Plaintiff's counsel was unable to see through any misrepresentation.

In *Evory v. RJM Acquisitions Funding LLC*, the Seventh Circuit held that when a consumer is represented by a lawyer, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be

actionable." 505 F.3d 769, 774–75 (7th Cir. 2007). However, the *Evory* court acknowledged that a "false claim of fact," such as a misrepresentation of an unpaid balance, might by difficult for a lawyer to see through. *Id.* at 775. In those circumstances, "[s]uch a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer." *Id.* In this case, the alleged false or misleading statement was the representation that Granite would be owed document preparation fees and attorney's fees under the lease agreement. Although the Plaintiff's attorney may disagree about the meaning of the lease agreement, this was not a "false claim of fact" as contemplated by *Evory*. The Plaintiff's attorney had access to the lease agreement and could assess the Defendant's representation of those fees in light of the agreement's provisions. *See id.* (reasoning that a false claim made to a lawyer would be actionable because "[t]he lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake"). Since this case does not present circumstances involving a false claim of fact, the competent attorney standard governs the Court's analysis.

Under this framework, the Defendant argues that a competent attorney would not have been deceived by its representations regarding document preparation fees and attorney's fees.[5] The Court agrees. As already discussed, the lease agreement authorized Granite, in the event of a

---

[5] The Defendant also frames its argument in terms of standing, stating that because the Plaintiff was represented by counsel, he would not have been injured by a false or misleading statement. *See* Def. Br. 14–15, ECF No. 76. However, this argument seems to ignore the fact that statements to a consumer's attorney can lead to FDCPA liability. *See, e.g.*, *Evory*, 505 F.3d at 774–75. And to be clear, the Court is satisfied that the Plaintiff has an injury in fact based on his affidavit attesting to the costs he incurred defending the state court action and his increased muscle tension. *See* Pl. Ex. 12, ECF No. 82-2. That is enough to establish standing. *See Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (stating that a plaintiff must come forward with an affidavit or other evidence to support the elements of standing); *Friend v. Taylor Law, PLLC*, No. 4:17-cv-29, 2021 WL 5015096, at *4 (N.D. Ind. Oct. 27, 2021) (concluding that loss of sleep, headache/migraine, and muscle tension established injury in fact); *Lako v. Portfolio Recovery Assocs.*, No. 20-cv-355, 2021 WL 3403632, at *3–4 (W.D. Wis. Aug. 4, 2021) (concluding that the cost of defending a state court suit established injury in fact).

default, to charge "all costs and expenses including attorney's fees" incurred in exercising its rights under the agreement. The Defendant sought these fees in prosecuting Granite's breach of contract claim. A competent attorney would have understood that these fees were being demanded pursuant to the lease agreement—which the Plaintiff's attorney had access to—and an attorney would have understood that the fees were only recoverable in the event Granite was successful at trial. While Granite may not have been successful at the state court trial, that does not automatically transform the requested relief into a false or misleading statement. *Cf. Gomez*, 962 F.3d at 967 ("A demand for payment cannot be called 'false' just because, several years later, a judge disagrees with a legal argument supporting the debt collector's calculation of how much is due. A statement is false, or not, when made; there is no falsity by hindsight."). The Defendant is therefore entitled to summary judgment on the Plaintiff's § 1692e claim.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant's Motion for Summary Judgment [ECF No. 75]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendant Gutwein LLP and against the Plaintiff Syed Umar Husainy.

Furthermore, the Court DENIES the following motions: the Defendant's Motion to Strike Plaintiff's Amended Initial Disclosures [ECF No. 72]; the Plaintiff's Motion for Summary Judgment [ECF No. 77]; and the Plaintiff's Motion to Strike Gutwein Affidavit and Statistics Exhibit [ECF No. 83]. The Court also DENIES as moot the Defendant's Motion to Strike Plaintiff's Affidavit [ECF No. 87].

SO ORDERED on September 9, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT